# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **T.M. and S.R.**

**No. 21-0393** (Kanawha County 20-JA-292 and 20-JA-293)

## MEMORANDUM DECISION

Petitioner Mother J.B., by counsel Sandra K. Bullman, appeals the Circuit Court of Kanawha County's April 12, 2021, order terminating her parental rights to T.M. and S.R.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and James Wegman, filed a response in support of the circuit court's order. The guardian ad litem, Elizabeth G. Kavitz, filed a response on behalf of the children in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in denying her request for a post-dispositional improvement period and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2020, the DHHR filed a child abuse and neglect petition alleging that petitioner regularly abused drugs and exposed the children to drug use. The DHHR alleged that petitioner exposed the children to methamphetamine, an unhealthy and unclean home, and inappropriate caregivers. According to the petition, the children were left unsupervised because petitioner was found unresponsive on at least one occasion due to drug use. The DHHR further alleged that the children were dirty and had lice.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

Later that month, the circuit court held a preliminary hearing wherein a Child Protective Services ("CPS") worker testified to the allegations in the petition. The worker received a referral that petitioner was "found unresponsive and the two children were unsupervised alone with her at that time." The worker interviewed petitioner who admitted she had been using methamphetamine "on a pretty regular basis" and needed to go to rehabilitation. According to the worker, petitioner claimed that she only used methamphetamine when the children were asleep. However, the worker explained that petitioner's statement was untrue because petitioner was found unresponsive when the children were awake and unsupervised. As such, the worker opined that petitioner's drug use impaired her ability to care for the children. After hearing the evidence, the circuit court substantiated the allegations and ordered petitioner to participate in drug screens, supervised visitation, inpatient drug rehabilitation, and parenting classes.

The circuit court held an adjudicatory hearing in September of 2020 wherein petitioner stipulated to abusing and neglecting the children. The circuit court granted petitioner a post-adjudicatory improvement period and ordered that she continue working with her service providers and seeking drug treatment. The circuit court held a review hearing in November of 2020 to review petitioner's improvement period. The DHHR put on evidence that petitioner voluntarily quit her inpatient drug rehabilitation program. A CPS worker testified that petitioner left the program and declined admission to a second program. The worker further testified that petitioner had missed two supervised visits with her children and missed her psychological evaluation. As a result, the circuit court terminated petitioner's improvement period but ordered her to continue services and drug treatment.

In March of 2021, the circuit court held a dispositional hearing. A CPS worker testified that petitioner ceased working with service providers for at least two months and had only begun seeking services again the preceding day. The worker testified that petitioner had been "bouncing back and forth between facilities and she ha[d] pretty large gaps in her drug screens." The worker explained that petitioner would often contact him and ask if she could attend programs at different facilities without explanation. The worker testified that he contacted the rehabilitation facility and learned that petitioner wanted to attend a new facility that would allow her to leave the premises whenever she wanted. The worker opined that petitioner wanted to "leave the facility at various times when she knew that was against the rules" and that "she lied in order to get out of the facility," citing a false court hearing. The worker also indicated that petitioner admitted to the treatment facility that she had recently used methamphetamine and marijuana. The worker testified that since December of 2020, petitioner had not completed any drug treatment programs and that her drug screens were "quite sparse." Finally, the worker explained that petitioner had not visited with her children recently due to a lack of completed drug screens.

Next, petitioner testified and admitted she failed to maintain contact with service providers. Petitioner further admitted that she enrolled in but left several rehabilitation programs without completing them during the proceedings. Petitioner testified she was currently unemployed, though she claimed she had a new job lined up. Finally, petitioner admitted to recently smoking marijuana but denied other drug use.

In light of the evidence, the circuit court found that petitioner did not establish by clear and convincing evidence that she would successfully complete a post-dispositional improvement period. The circuit court found that petitioner had "already not complied with a previous improvement period." The circuit court found that petitioner had been "jumping around, leaving drug treatments" and had gone several months without completing significant drug treatment. The circuit court further found that petitioner had "no significant employment," "huge gaps in drug screening," and had done "nothing to indicate that she solved the problems" that led to the filing of the petition. Based upon these findings, the circuit court found there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was in the best interests of the children to terminate petitioner's parental rights.[2] The circuit court entered an order reflecting its decision on April 12, 2021. Petitioner appeals from this order.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her a post-dispositional improvement period because she testified at the dispositional hearing that "she had reentered a drug rehabilitation program and was doing well." Petitioner concedes that her post-adjudicatory improvement period was terminated because she left her first rehabilitation program and declined to enter a second. However, petitioner testified that she had recently been drug free, except for marijuana, and would continue in her new rehabilitation program for six to nine months. As such, petitioner argues that she showed by clear and convincing evidence that she was serious about drug rehabilitation and committed to improving her circumstances. We find petitioner's arguments unavailing.

---

[2]T.M.'s father is a nonabusing parent, and the permanency plan is for the child to remain in his care. S.R.'s father voluntarily relinquished his parental rights below, and the permanency plan for the child is adoption by the great-grandmother.

Although there were points in time where petitioner complied with services generally, she ignores the fact that she did not complete many of the terms required by her family case plan. Petitioner does not dispute that she did not participate in multiple required drug screens or that she admitted to using methamphetamine and marijuana during the proceedings. Further, petitioner admitted that she had a substance abuse problem but failed to complete an inpatient treatment program. However, instead of addressing any of these deficiencies, petitioner's argument in support of this assignment of error focuses entirely on certain factors that she believes precluded her ability to remedy this issue, including a lack of money for rent which prevented her from completing an inpatient treatment program. Contrary to petitioner's claims, the DHHR put on evidence that petitioner quit at least one inpatient substance abuse program and declined admission to a second program. A CPS worker testified that one rehabilitation facility noted that petitioner wanted to find a facility that allowed her to leave the premises whenever she wanted and that she misled the facility about the date of a court hearing in order to leave the program. Petitioner also fails to address her lack of participation in other services, including missing visitation with the children and her psychological evaluation. Without further addressing the specific difficulties that petitioner believes resulted in her continued inability to participate in services, attend drug screenings, or maintain enrollment in a drug rehabilitation program, we note that petitioner bore the responsibility of completing the goals of her family case plan, and the record shows that she took almost no steps to achieve these goals. *See* W. Va. Code § 49-4-610(4) ("When any improvement period is granted to a respondent pursuant to this section, the respondent shall be responsible for the initiation and completion of all terms of the improvement period.").

Despite the overwhelming evidence of petitioner's noncompliance, she nonetheless argues that she would have fully participated in a post-dispositional improvement period. West Virginia Code § 49-4-610(3)(D) provides that in order to obtain a post-dispositional improvement period after the granting of a previous improvement period, a parent must "demonstrate[] that since the initial improvement period, the [parent] has experienced a substantial change in circumstances" and that "due to that change in circumstances, the [parent] is likely to fully participate in the improvement period." Further, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Here, the record is clear that petitioner failed to fully comply with the terms and conditions of her prior post-adjudicatory improvement period, as evidenced by her failure to participate in drug screens, attend her psychological evaluation, or complete an inpatient drug treatment program. The circuit court considered this evidence when it terminated her post-adjudicatory improvement period and denied her motion for a post-dispositional improvement period. Even more importantly, petitioner fails to cite to any evidence in the record that shows that she underwent a substantial change in circumstances subsequent to her post-adjudicatory improvement period. Therefore, we find that the circuit court did not err in denying petitioner's motion for a post-dispositional improvement period.

Finally, petitioner asserts that the circuit court's decision to terminate her parental rights was improper when she was making substantial progress toward reunification. Petitioner argues that the circuit court erred in terminating her parental rights rather than allowing the nonabusing father to retain custody of T.M. and granting a transfer of guardianship of S.R. to his uncle as a

less-restrictive alternative. According to petitioner, the circuit court was required to give precedence to the dispositions listed in West Virginia Code § 49-4-604(c) and that it should have allowed for placement of the children with their father and uncle, respectively, rather than terminate her rights. We disagree and find no error in the circuit court's termination of petitioner's parental rights.

First, the fact that T.M.'s father obtained full custody of the child has no bearing on the circuit court's termination of petitioner's parental rights. While petitioner argues that this permanent placement allowed for the implementation of a less-restrictive dispositional alternative, she ignores the fact that we have previously held that West Virginia Code § 49-4-604 "permits the termination of one parent's parental rights while leaving the rights of the [other] parent completely intact, if the circumstances so warrant." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). Further, "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *Id*.

Additionally, the circuit court found that petitioner failed to follow through with the DHHR's rehabilitative services based on the evidence of petitioner's sporadic compliance and her failure to participate in drug screens, visit with the children, and complete a drug treatment program. Importantly, those findings constitute a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future under West Virginia Code § 49-4-604(d)(3). Moreover, the circuit court found that termination of petitioner's parental rights was in the children's best interests. According to West Virginia Code § 49-4-604(c)(6), circuit courts may terminate parental rights upon these findings. While petitioner claims the circuit court should have imposed a less-restrictive alternative to the termination of her parental rights, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). The record shows that the circuit court had ample evidence upon which to base these findings, and we decline to disturb them on appeal. As such, termination of petitioner's parental rights was appropriate.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 12, 2021, order is hereby affirmed.

5

Affirmed.

**ISSUED**: November 8, 2021


**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton